**John KOLESAR, Petitioner,**

v.

**The YOUGHIOGHENY AND OHIO COAL COMPANY; Director, Office of Workers' Compensation Programs, Respondents.**

**No. 84–3206.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 11, 1985.

Decided May 3, 1985.

Sanford A. Meizlish, argued, Barkan and Neff Co., L.P.A., Columbus, Ohio, for petitioner.

Benefits Review Bd., J. Michael O'Neill, Kenneth Sollars, U.S. Dept. of Labor, Washington, D.C., Gerald P. Duff, argued, Cathy Armstrong, Kinder, Kinder & Hanlon, John G. Paleudis, St. Clairsville, Ohio, for respondents.

Before LIVELY, Chief Judge, and MARTIN and KRUPANSKY, Circuit Judges.

PER CURIAM.

Petitioner John Kolesar (hereinafter "claimant") appeals from the denial of his application for black lung benefits sought pursuant to 30 U.S.C. § 901 *et seq.* The Youghiogheny and Ohio Coal Company (hereinafter "Company") is the responsible operator.

Claimant was born on December 5, 1909, and finished two years of high school. The parties stipulated that he was employed in underground mines for at least 21 years, although the a.l.j. found that "the record indicated that he was employed in underground mines for about 37 years, much of it under dusty conditions." Claimant retired from the company on December 5, 1974, his 65th birthday.

---

**5.** In *Bellwood,* the complaint was that defendants' actions were segregating a neighborhood, bringing in more blacks.

The medical evidence of record included three x-rays which had been interpreted as showing simple pneumoconiosis. The only comprehensive examination of claimant was performed by Dr. George O. Kress, a certified "A" reader and pulmonary disease specialist. Based upon x-rays, ventilation studies and arterial blood gas tests, Dr. Kress concluded that claimant's advanced age, rather than his respiratory condition, precluded claimant from performing his usual coal mine work.

Based on the three positive x-ray interpretations, the a.l.j. found that claimant was entitled to the presumption of total disability due to pneumoconiosis in accordance with 20 C.F.R. § 727.203(a)(1). However, the a.l.j. further found that the medical evidence, specifically the comprehensive report of Dr. Kress (the employer's medical consultant), effectuated rebuttal of the presumption pursuant to § 727.203(b)(2). Section 727.203(b)(2) provides for rebuttal where it is shown that the claimant can perform his usual coal mine work. The Board affirmed the a.l.j.'s denial of benefits and claimant brought a timely appeal. This court must affirm the decision below if it is supported by substantial evidence and in accordance with the applicable law. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

In relevant part, the rebuttal provision found at § 727.203(b)(2) states:

(b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption ... shall be rebutted if:

\*     \*     \*     \*     \*     \*

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...

Claimant, who was 71 at the time of the hearing before the a.l.j., argued on appeal that the a.l.j. erred in not considering his age as a factor in determining that he could do his usual coal mine work under the rebuttal provisions set forth above. The Sixth Circuit has recently rejected this argument. In *Ramey, et al. v. Kentland Elkhorn Coal Corp., et al.*, 755 F.2d 485 (6th Cir.1985), the court held that vocational factors need not be considered when rebuttal is undertaken pursuant to § 727.-203(b)(2). *Ramey, supra*, at 487. In addition to the well-articulated rationale of the *Ramey* decision, the conclusion that age should not be a factor in determining whether a miner can do his usual coal mine work is mandated by the considerations set forth below.

The declaration of Congress' purpose in enacting the Black Lung Benefits Act (the "Act") is clearly set forth in 30 U.S.C. § 901(a). In relevant part, § 901(a) reveals:

It is ... the purpose of this subchapter to provide benefits to coal miners who are *totally disabled due to pneumoconiosis* ... and to insure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or *total disability due to pneumoconiosis*.

(emphasis added).

Thus, it is beyond peradventure that Congress' intent was to provide comfort through financial numeration to those whose total disability is due to pneumoconiosis. In 30 U.S.C. § 902(f)(1), Congress further specified that the term "total disability" has the meaning given it by the regulations of the Secretary of Health and Human Services, *except that*

(A) in the case of a living miner, such regulations shall provide that a miner shall be considered totally disabled *when pneumoconiosis prevents him or her from engaging in gainful employment* requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged ...

In following the mandate of Congress as set forth in § 901 and § 902(f)(1)(A), the

Secretary enacted a comprehensive scheme of regulations which allows for certain presumptions in favor of a miner attempting to establish total disability due to pneumoconiosis. *See*, e.g., 20 C.F.R. § 727.203(a). However, in apparent recognition of Congress' intent to provide benefits only to those who are "totally disabled due to pneumoconiosis," 30 U.S.C. § 901, the Secretary also implemented regulations allowing for the rebuttal of total disability, including the regulation in dispute herein, 20 C.F.R. § 727.203(b)(2). Fairly read, § 727.-203(b)(2) establishes two methods of rebutting the presumption of total disability: (1) by showing that the individual is able to perform his usual coal mine work, *or* (2) that claimant is able to do other comparable and gainful work.

As for the second vehicle for effectuating rebuttal, i.e. showing that the claimant is able to do comparable, gainful work, § 727.203(b)(2) directs attention to 20 C.F.R. § 410. 412(a)(1), which in turn references §§ 410.424–410.426 for a definition of "comparable and gainful work." Consequently, § 410.426(d), which provides a method for determining the extent of a miner's disability under the Act, states that a miner's pneumoconiosis shall be found totally disabling

> ... if other relevant evidence (See § 410.414(c)) establishes that the miner has (or had) a chronic respiratory or pulmonary impairment, the severity of which prevents (or prevented) him not only from doing his previous coal mine work, *but also, considering his age, his education, and work experience, prevents (or prevented) him from engaging in comparable and gainful work.*
>
> (e) When used in this section, the term "age" refers to the *chronological age and the extent to which it affects the miner's capacity to engage in comparable and gainful work.*

(emphasis added).

Thus, it is clear that under § 410.426(d), made applicable to the instant case via the cross references found in § 727.203(b)(2) and § 410.412(a)(1), age *is* a factor to be considered when the issue presented is whether a coal miner's pneumoconiosis prevents him from doing comparable, gainful work. However, the regulations provide a different analysis when the issue is, as in the case at bar, whether the miner can perform his usual coal mine work.

Again by traversing the numerous cross-references in the regulations, it is discovered that 20 C.F.R. § 410.414(c), made relevant to the instant case pursuant to § 727.-203(b)(1), § 410.412(a)(1), and § 410.426(d), defines other "relevant evidence", a term used in § 727.203(b)(1), as including

> ... medical tests such as blood gas studies, elecrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the miner's physician [and] his spouse's affidavits ...

In sum, nothing in the statute or regulations requires consideration of age as a factor in determining whether the presumption of total disability due to pneumoconiosis is rebutted pursuant to 20 C.F.R. § 727.203(b)(2), i.e., by showing that a miner can perform his usual coal mine work. In addition to this circuit's *Ramey* decision, the above conclusion was recognized by the Fourth Circuit in *Director, OWCP v. Beatrice Pocahontas Company*, 698 F.2d 680 (1983). The claimant in *Beatrice* had been examined by several pulmonary specialists who were "unable to find the claimant totally disabled from his regular job in the coal mine industry" due to pneumoconiosis. 698 F.2d at 682. The *Beatrice* court held that the medical evidence alone was sufficient to rebut the presumption of total disability due to pneumoconiosis under § 727.-203(b)(2). Accordingly, the court rejected claimant's argument that vocational evidence, such as age, skills, work experience, etc., should be considered to negate the rebuttal. The *Beatrice* court observed:

> Beatrice sought to rebut the interim presumption by a showing that under 20 C.F.R. § 727.203(b)(2) that "in light of all relevant evidence" the claimant is able to do coal mine work. "All relevant medical evidence should be considered" in re-

butting the presumption. 20 C.F.R. § 727.203(b). The regulations appear to consider medical evidence alone sufficient to rebut the initial presumption of disability. There is no language in the regulations requiring vocational evidence as a necessary element of rebuttal. If economic evidence were required to rebut the presumption, the Director would have written this requirement into the regulations.

\*    \*    \*.    \*    \*    \*

An employer's duty to come forward with vocational evidence does not arise unless and until the claimant establishes by adequate medical evidence that his disability prevents him from performing his previous work. [cite omitted].

698 F.2d at 682.[1]

In sum, it is clear that while vocational factors should be considered in determining the possibility of comparable employment, such factors are not relevant if the medical evidence substantiates that the miner can perform his normal coal mine work. Thus, the a.l.j. was correct in determining that age should not be considered where the issue is whether claimant can perform his normal coal mine tasks.

This court also considered claimant's argument that the a.l.j.'s finding of nondisability is not supported by substantial evidence and find it to be without merit.

In view of the foregoing, the decision of the Board is AFFIRMED.

---

1. In *Crider v. Island Creek Coal Co., et al.,* 723 F.2d 908 (6th Cir.1983) (per curiam), a panel of this circuit also recognized that "... the test of total disability under the Part C interim presumption is a *medical test.* The presumption is rebutted where the relevant medical evidence establishes that the individual is able to do his usual coal mine work..." However, as *Crider* offers no indepth analysis and is unpublished, it is of relatively no precedential value to this panel.